UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 06-199

KATHLEEN A. MAURER                                    PLAINTIFF

VS.                          OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                    DEFENDANT


     This matter is before the court on the motion for summary
judgment of the plaintiff (Doc. 9) and the cross-motion for
summary judgment of the Commissioner (Doc. 10).

     In reviewing the decision of the ALJ in Social Security
cases, the only issue before the court is whether the decision is
supported by substantial evidence.  Richardson v. Perales, 402
U.S. 389, 390 (1971).  "The findings of the Commissioner are not
subject to reversal merely because there exists in the record
substantial evidence to support a different conclusion.  Even if
the evidence could also support another conclusion, the decision
of the ALJ must stand if the evidence could reasonably support
the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298,
300(6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73
(6th Cir. Aug. 16, 2001)).

     In order to qualify for disability benefits, a claimant must
establish that she is disabled within the meaning of the Social
Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability.  Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)).  Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment.  Id.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience.  Id.  (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)).  Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work.  Id.  Lastly, even if the claimant cannot perform her past

relevant work, she is not disabled if she can perform other work which exists in the national economy.  Id.  (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, the claimant was fifty-five years old and had a high school education.  She has prior relevant work as a distribution manager and retail supervisor. She alleges she became disabled on April 26, 2002, the day she was hospitalized with a myocardial infarction.

On May 28, 2002, she was again hospitalized and the doctors found that she had suffered a stroke.  Dr. Chang performed a physical exam and found right-sided weakness, double vision, and facial droop.  A neurological exam, however, revealed normal strength with decrease to light touch.  She was released from the hospital on May 31, 2002, and proceeded with a course of physical and occupational therapy.  Therapy seemed to help her, but she had an unsuccessful work attempt in the summer of 2002.

Dr. Breen prescribed prism glasses to correct claimant's symptoms of double vision.  Claimant told Dr. Chang that her double vision continued to come and go depending on her level of fatigue.

In October 2002, Dr. Sheridan performed a consultative examination for the Commissioner.  Dr. Sheridan found that the

claimant had an ataxic gait, 2+ reflexes in the arms and hyperesthesia in the right arm and leg.  Dr. Sheridan believed that the claimant's stroke affected her cranial nerves in terms of her balance and coordination.  He concluded that she could only do sedentary work for one hour a day.

In September 2004, Dr. Chang, claimant's treating doctor, reported that the claimant had double vision, decreased energy and residual weakness on the right side.  (AR 500).  He stated that she had no improvement in the 2003, and he did not expect her to improve any further in the future.  He opined that the claimant could not work.

The record also contains RFC assessments from three consulting physicians who each performed a records review and concluded that the claimant could perform light work.

At the evidentiary hearing, the ALJ sought testimony from the claimant, a medical expert and a vocational expert.  Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

At step 1, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability.  At step 2, the ALJ determined that the claimant has "severe" residuals of a cerebrovascular accident, hypertension, coronary artery disease, depression and a post-traumatic attention deficit.  The ALJ determined that claimant's double vision was not "severe."

At step 3, the ALJ determined that, although claimant has impairments that are "severe," she does not have an impairment or

4

combination thereof that is listed in or equal to one listed at
20 C.F.R. part 404, subpart P, appendix 1.  At step 4, the ALJ
found the claimant cannot perform her past relevant work.

At step 5, the ALJ found that the claimant has a residual
functional capacity for a range of light work.  Specifically, the
ALJ found:

> [The claimant] could lift, carry, push, or pull up to 10
> pound frequently and 20 pounds occasionally.  She could
> stand and/or walk up to 6 hours a workday.  There are no
> limitations on her ability to sit. She could occasionally
> stoop, kneel, crouch, and climb ramps/stairs.  She could
> occasionally perform work requiring the forceful use of the
> right leg and could occasionally perform firm forceful
> grasping with the right hand.  She should never crawl,
> balance, climb ladders/ropes/scaffolds/ or work at
> unprotected heights or around hazardous machinery.  Due to
> complaints of eye fatigue and strain, she should not be
> required to do more than occasional reading.  The jobs
> should not require her to remember or carry out detailed job
> instructions or require more than simple reading, writing
> and math.  This assessment is supported by the record as a
> whole and the positive signs and findings therein.

The vocational expert opined that given claimant's age,
education, work history and the limitations assigned by the ALJ,
that a significant number of jobs existed in the national economy
that the claimant could perform including stock clerk (1,450 jobs
locally and 177,920 jobs nationally), sales attendant, (1,290
jobs locally and 184,160 jobs nationally), housekeeper/cleaner,
(4,550 jobs locally and 707,740 jobs nationally), and
photocopier/collator, (660 jobs locally and 77,115 jobs
nationally).

Based on this testimony, the ALJ found that the claimant was
disabled as of January 2005 because the grid directs that a
person of claimant's age on that date, education, and skill set
with the ability to perform light or sedentary work shall be

5

declared disabled.  See 20 C.F.R. Part 404, Appendix 2. The ALJ
found, however, that the claimant was not disabled prior to
January 30, 2005 because she could perform a range of light work.

In this appeal, the claimant is seeking an earlier onset
date of disability.  Pursuant to the grid, the claimant need only
prove that she was only capable of sedentary work from April 2002
until December 2004 to succeed on this appeal.  Id.

The claimant argues that the ALJ erred at step two in
finding that her double vision was not a severe impairment.  The
regulations define a non-severe impairment as one that does not
significantly limit your physical or mental ability to do basic
work activities.  20 C.F.R. § 404.1521.  The ALJ explained his
findings:

> In June 2002, Dr. Becker noted that the claimant reported
> only occasional double vision, but it is corrected with
> prism glasses (Exhibit 8F).  A therapist noted, however,
> that the claimant was not wearing the glasses (Exhibit
> 13F/2).  Although Dr. Chang reports disability due to double
> vision (Exhibits 1F/5, 15, & 19; 20F), his office notes show
> that she rarely complained of double vision during such
> visits (Exhibits 1F, 23F, 24F).  Treatment records of
> ophthalmologist, Charles Breen, MD. show that he fitted her
> with prism glasses in June 2002.  She did not return until
> March 2005, when she sought treatment for iritis.  At that
> time, she told him that she still has double vision, but the
> glasses help (Exhibit 25F).  She has never sought further
> evaluation or treatment for double vision.  The claimant's
> double vision is not considered to be a "severe" impairment.
> Her glasses admittedly correct the problem, and the record
> shows no significant limitation in this regard.

The court finds that substantial evidence exists to support
the ALJ's finding that the claimant's double vision is not a
severe impairment. The court further finds the ALJ considered
this non-severe impairment in his RFC determination when he
limited the claimant to occasional reading specifically because

6

of her complaints of eye fatigue and strain.  20 C.F.R. §
404.1545(e).  Accordingly, the court finds the ALJ did not err at
step two of the determination.

The claimant also argues that the ALJ erred in failing give
the opinions of the doctors that examined her controlling weight
when making his RFC determination. The regulations provide that a
treating physician's opinion will not be given controlling weight
unless it is "well -supported by medically acceptable clinical
and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2).
If an ALJ does not find a treating source's opinion to be
entirely credible, the ALJ may reject it, provided that good
reasons are specified.  Bogle v. Sullivan, 998 F.2d 342, 347-49
(6th Cir. 1993).

Drs. Chang, Chevalier and Sheridan have each opined that the
claimant cannot perform light work and, in fact, could not
perform sedentary work for a sustained time.  Dr. Chang,
claimant's treating physician, did not provide a statement as to
what the claimant could still do.  Instead, on September 14,
2004, Dr. Chang wrote a letter stating that the claimant
continued to experience double vision and right sided weakness,
and has had no improvement in the last year.  He also stated that
he did not believe that the claimant could be gainfully employed.

A statement as to whether the claimant can perform gainful
activity is not a medical opinion.  A medical opinion is a
statement from an acceptable medical source that reflects

judgments about the nature and severity of the impairment,
including symptoms, diagnosis and prognosis, and what a claimant
can still do despite her restrictions.  20 C.F.R. §
404.1527(a)(2), 416.927(a)(2).  The commissioner, however, is not
required to accord Dr. Chang's conclusion that the claimant is
disabled with controlling weight because this is a legal
conclusion and a decision reserved to the Commissioner.  20
C.F.R. § 404.1527(e)(1), 416.927(e)(1).

Plaintiff also argues that the opinions of consulting
physicians Drs. Sheridan and Chevalier should have been given
controlling weight.  Neither of these doctors, however, is a
treating physician.

Dr. Sheridan performed a consulting examination on the
claimant on October 17, 2002, and found that she was limited to
sedentary work for no more than one hour per day, which would
render her disabled at any age.  Dr. Sheridan's objective
clinical findings, however, do not support such severe
limitations.  Although the claimant demonstrated a slight
antalgic gait listing to the right as well as ataxia when she
walked, she demonstrated full strength in her left arm and leg
muscles and a slightly diminished strength, four out of five, in
her right arm and leg.  Her heel to shin tests were normal.  The
claimant also maintained full range of motion in her cervical
spine, lumbar spine, shoulders, elbows, wrists, fingers, thumbs,
hips, knees and ankles.

Dr. Chevalier provided medical testimony at the hearing and
opined that the claimant could not stand for more than two hours

a day and could use her right hand for gripping for four hours a day.  He also opined that the claimant would have difficulty working a 40-hour work week because of her fatigue.  Pursuant to his testimony, the claimant would not be capable of performing at the light level, and, even at a sedentary level her ability to work for a sustained period of time is questionable.

The ALJ discounted the opinions of both Drs Sheridan and Chevalier, stating:

> The evidence does not support the restrictions given by Dr. Sheridan.  His opinion was provided only six months after her stroke and was over restrictive in light of the signs and findings of record and the claimant's reported daily functioning.  The evidence also does not support the restrictions given by Dr. Chevalier.  Dr. Chevalier was unable to point to any specific evidence in the record, other than claimant's presentation, to support the limitations provided.  His limitations are similarly more restrictive tha[n] the evidence suggests.  See, e.g. Exhibits 2F/3 (10 METS); 5F (motor strength and sensory intact); 7F/9 (minimal weakness right hand/arm); 8F (motor-full strength throughout, sensory intact, reflexes, coordination and gait normal).  With respect to her mental impairments, the record shows only mild limitations in daily activities and social functioning, with moderate limitations in attention, concentration, persistence, and pace.  There have been no episodes of deterioration.

(AR 23).

The court finds that the ALJ provided good reasons why he was not crediting these physicians' statements with controlling weight.  Specifically, their restrictive assessments to less than sedentary work were not supported by the medical evidence of record.

Lastly, the claimant argues that the ALJ erred by failing to explain how he reached the residual functional capacity for light work.  The claimant argues that SSR 96-8p requires a narrative discussion by the ALJ as to how he reached his RFC determination.

9

She concludes that the ALJ committed reversible error by failing to articulate what reports he relied on in reaching his RFC finding.

The court agrees that the ALJ's analysis of the claimant's RFC is flawed.  Although the court finds there are RFC assessments in the record from non-examining physicians that support a finding of light work, the court is concerned with the ALJ's analysis of the claimant's RFC.

Specifically, under Social Security Ruling 96-8p, the assessment must include a narrative discussion describing the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  See Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 548(6th Cir. 2002) (quoting Bencivengo v. Comm'r of Soc. Sec., No. 00-1995, 2000 WL 1929759 (3rd Cir. Dec. 19, 2000)).

In the case at bar, the ALJ summarized the medical records and then stated that "[c]onsidering the entire record" he found claimant could perform a range of light work.  Although the ALJ explained that the medical opinions of Drs. Sheridan and Chevalier, which concluded that the plaintiff was capable of

10

performing at less than a sedentary level, were not supported by the medical records, he did not articulate what evidence supported his finding that the claimant could perform at a light level for eight hours a day.

In addition, the record is replete with evidence of the claimant's fatigue, but the ALJ did not discuss her fatigue in his RFC determination.  The evidence also demonstrates that although the claimant had only minimally reduced strength (four out of five) in her right leg, she walked with an ataxic gait listing to the right. The ALJ did not explain how the claimant's fatigue and unstable gait would affect her ability to work at a light level on a sustained basis.

Although an ALJ is not required to discuss every piece of evidence, he must discuss how the evidence supports his determination so that the claimant will understand the disposition of her case.  <u>Delgado</u>, 30 Fed. Appx. at 548.  The court finds the ALJ's decision failed to provide the minimal articulation needed to support his conclusion.  The mere recitation of the medical reports is insufficient.  The ALJ must provide his analysis.  SSR 96-8p.  Here, the ALJ failed to support his RFC finding with any specific evidence.  For these reasons, the court will require the ALJ to articulate with more specificity how he resolved the material inconsistencies and/or ambiguities in the evidence, and how he reached his RFC determination.

For the foregoing reasons, the court finds that the ALJ's

decision is not based on substantial evidence.  Once a court
determines that substantial evidence does not support the
Commissioner's decision, it can reverse the decision and award
benefits only if all essential factual issues have been resolved
and the record establishes a claimant is entitled to benefits.
<u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171,
176 (6th Cir. 1994).  Where, as here, the factual issues have not
been resolved, the court shall remand the case for further
consideration.  <u>Id</u>.

Therefore, the court being sufficiently advised,

**IT IS ORDERED** that the motion for summary judgment of the
claimant (Doc. 9) be, and it hereby is, **granted in part** as to
claimant's request for a reversal of the Commissioner's decision,
and **denied in part** as to her request for a court ordered award of
benefits, and that the cross-motion for summary judgment of the
defendant (Doc. 10) be, and it hereby is, **denied**.

**IT IS FURTHER ORDERED** that this action be, and it is, hereby **remanded** to the Commissioner for further proceedings.

This 23rd day of April, 2007.



Signed By:

**_William O. Bertelsman_** *WOB*

**United States District Judge**